JESÚS STELLA RODRÍGUEZ, Plaintiff, Cross-defendant and Appellant, *v.* JORGE BLASINI FLACH, ETC., ET AL., Defendants, Counterclaimants and Appellees.

No. 8462. Argued June 12, 1942.—Decided February 5, 1943.

*Leopoldo Tormes* for appellant.  *Raúl Matos* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The action in this case, although instituted pursuant to the provisions of the Act relating to Declaratory Judgments, is simply an action of denial of servitude.  The following are the essential facts:

Plaintiff Stella and defendant Blasini were co-owners of the estate "Santa Elena" situated in Guayanilla.  On July 30, 1937, said co-owners agreed on the division of the common property and divided said estate into three parts, adjudicating to the plaintiff one denominated "Stella Número Dos" and to the defendant the other two parts, named "Blasini Número Uno" and "Blasini Número Tres."

According to the deed of adjudication, there were imposed three servitudes on the parcel "Stella Número Dos" as servient tenement, for the benefit of the parcels adjudicated to Blasini as dominant tenements, as follows: (1) A pipe line which springs from a pump in the dominant tenement and extends across the servient tenement; (2) an irrigation ditch which carries water from parcel "Blasini Nú-

mero Tres" along the highway, near the boundary of parcel "Stella Número Dos," to parcel "Blasini Número Uno," as dominant tenement; and (3) a concrete tank installed in "Stella Número Dos" for the benefit of parcel "Blasini Número Uno."

Plaintiff alleges that the defendant alleges a right to use as a thoroughfare road leading to several farms which he owns at the north and east of parcel "Stella Número Dos," a road which is open on the premises of said parcel; and that in the deed wherein said parcel was adjudicated to the plaintiff, there is no servitude of right of way described or constituted in favor of defendant's estates. Plaintiff prays that judgment be rendered decreeing that no servitude of right of way exists in the parcel adjudicated to the plaintiff and in favor of those adjudicated to the defendant.

Defendant alleges that parcel "Stella Número Dos" is crossed by a path named "Pump Alley," which runs from the highway which leads from Yauco to Guayanilla to the estates of the defendant; that said alley has been from the beginning the regular outlet for the servants of estate "Santa Elena" and that after the division of the property, the path has been and is being used by the successors of the person who established it and that nothing to the contrary has been expressed in the deed of partition, said alley always remaining open as an encumbrance or apparent servitude. As special defenses, the defendant alleged: (1) that he acquired the right of way over said road "because it has been used from time immemorial by himself as well as by the former owners, uninterruptedly, prior to the effectiveness of the Spanish Civil Code, extended to Puerto Rico by Royal Decree of June 31, 1889, pursuant to the Seven *Partidas* and therefore that its acquisition by prescription has consolidated his right of ownership"; and (2) that the road was dedicated to public use by the former owners, which fact shows the existence of a permanent servitude of right of way for

the defendant and his estates. The defendant prays that it be decreed that a servitude of right of way exists on the road in question in favor of his estates as dominant tenements.

In his complaint as well as in his answer to the cross complaint plaintiff Stella insisted that defendant Blasini and his heirs were barred from alleging any right of servitude of right of way over the road "La Bomba," inasmuch as Blasini admitted in the deed óf partition of property, that said road was open in the premises of the parcel "Stella Número Dos," without there being mentioned in the deed the existence of a servitude of right of way over said path.

After the case was heard in the District Court of Ponce, judgment was rendered dismissing the complaint and sustaining the cross complaint. Feeling aggrieved, plaintiff Stella took the present appeal. In support of his appeal, he alleges that the trial court erred in dismissing plaintiff's motion to strike the special defenses of acquisition of the road by prescription and because it had been dedicated to the public use; in construing the deed of partition of property and inserting therein a servitude of right of way about which nothing appears in the deed; in applying to the facts of the case §477 of the Civil Code, 1930 edition; in failing to apply §§500 to 504, both inclusive, of the same Code; in admitting in evidence the testimony of four of the witnesses called by the defendants and in basing thereon its judgment, although said defendants were estopped from invoking title by prescription or because the road had been dedicated to the public use; and in rendering a judgment contrary to the law and the facts.

We shall consider first the evidence in order to determine whether it is sufficient to justify the judgment appealed from.

In support of their alleged special defenses, the defendants offered in evidence a number of plats wherein the road

in question appears and the testimony to which we shall now refer.

Marcelino Cruz Pacheco, 81 years of age and a resident of Guayanilla since 1859, testified that he knows estate "Santa Elena" and the road "La Bomba" since 1868; that the road was the main pathway within said estate; that from 1868 the public passed by said pathway and the employees of Stella and Blasini always travelled thereon; that that road is used to carry cane from the estate; that there exist ruins of a cemetery where this road lies, which cemetery was used for about ten years.

Abdón Rodríguez, 73 years of age and a resident of Guayanilla, after identifying the road "La Bomba," testified that he has known that road for over 60 years; that during all that time the whole neighborhood has used it; and that there exists a cemetery from which the remains have not been removed.

Adolfo Ortiz, 65 years of age, a resident of Guayanilla, testified that he knows the estate and the road ever since he can remember; that the neighbors and the laborers passed by there as well as the cars to go to the home of Julio Pietri.

Francisco Rodríguez, resident of Guayanilla, 48 years of age, testified that he has known the road for about 40 years; and that the same has been open to the public ever since he can remember, and that the public has been using the same to date. Several other witnesses for the defendant established the fact that the road "La Bomba" has always been and actually is open to the public.

The evidence for the plaintiff tended to show that the road in question belonged exclusively to him by virtue of the deed of partition of property.

The trial court did not err in refusing to strike out the special defenses of acquisition of the servitude of the right of way by prescription and by dedication of the road to the public use; nor in admitting the oral evidence to establish

said defenses. Since the complaint filed against him tended to deny the existence of a right of way over the road "La Bomba" in his favor, the defendant was entitled to allege in his defense the existence of the servitude and the acquisition thereof by one or more of the modes recognized by law for the acquisition of that kind of right. If the defendant, as a member of the public, had acquired the right to use said road, the fact that no mention was made of the existence of said right in the deed of the division of property existing between him and the defendant, may not and should not constitute an impediment to deprive him of his right to allege a title acquired by prescription independent of the deed of partition. The question before the trial court did not involve in any manner the construction of the deed of division of property, inasmuch as nothing was said therein either in behalf or against the existence of the alleged servitude of right of way.

Section 477 of the Civil Code (1930 ed.) reads as follows:

"The existence of any apparent sign of servitude between two tenements established by the owner of both of them, shall be considered, if one of them be alienated, as a title, in order that the servitudes may continue actively and passively, unless, at the time of the division of the ownership of both tenements, the contrary be expressed in the deed of conveyance of either of them, or if the said sign is removed before the execution of such instrument."

The statutory provision which we have just copied is fully applicable to the facts in the present case. The evidence shows beyond all doubt that the road "La Bomba" existed prior to 1868, and that from the beginning, it has been used as the regular pathway for the servants of six estates, which belonged jointly to the plaintiff and to the defendant until July 30, 1937, on which date the deed of partition was executed. When the deed of partition was executed and parcels "Blasini Número Uno" and "Blasini Número Tres" were adjudicated to defendant Blasini, the road was

still open as an an apparent servitude, it being used by the servants of the estates belonging to the community, and by the public. If plaintiff Stella wished that said road should belong exclusively to him and that the adjudication of the two parcels to Blasini should not be considered "as a title for the servitude to continue actively and passively," he should have so expressly provided in the deed of partition. We have already seen that there is no mention of this particular in the deed. The plaintiff could have made the apparent servitude disappear before the execution of the deed, but he failed to do so. The evidence shows that the road continud just as it was before, open and used by the defendant and by the public. The lower court did not err in failing to apply §§500 to 504 of the Civil Code. Upon an examination thereof it will be readily seen that they are inapplicable.

The plaintiff-appellant alleges that §477 of the Civil Code (§541 of the Spanish Civil Code) is applicable only to cases where there are involved the distinct and separate estates which have been joined into one ownership, and not to the division of one estate, inasmuch as said section refers to two estates. The commentators on §541 of the Spanish Civil Code, as well as the Supreme Court of Spain, have expressed an opinion contrary to appellant's contention. Scaevola says (vol. 10, p. 284):

". . . Laurent, Germano, and Pacifici-Mazzoni expressed their opinion in the sense that it is applicable to both cases and we also agree with this opinion.

"In fact when the ownership of several estates has been consolidated there is no reason why juridically it should be spoken of as different estates, because they all constitute one juridical unit. It should never be forgotten that the only moment which requires attention is that of the material division of the ownership, that of the extinction of the unit, either by the alienation of one part of the property which, before the consolidation constituted one estate, or by the alienation of any part thereof. Even in the case of a consolidation of the ownership of several estates, it is quite probable that the owner should alter, during the consolidation of the ownership,

the extension or the condition of the aggregated estates and therefore at the time of the alienation they are not the same original ones, but larger or smaller. The servitude springs from the alienation of one material part of the property, constituting one juridical unit, either because it is one estate alone or because it is a consolidation of several estates: this is of no consequence. In either case there exists the same reason and there should be an identical right. But what the spirit and the letter of the law require is the presence of two separate estates belonging to different owners and this may also appear in the division of one tenement, inasmuch as such separate partition, from the time of the division, constitutes a different estate. We again repeat that the moment of the separation of the ownership by the material division of the property is the important decisive moment and that the law does not and should not require that while there exists a consolidation of ownership, the tenements should constitute separate estates. Furthermore, this is a legal impossibility precisely because due to the fact that the ownership of several estates is consolidated into one person there exists a juridical unit.''

In volume 4, pp. 616 and 617 (Third Edition) of his commentaries, Manresa states the following:

''Between two estates.—We have already said that the sign could be found depending on the kind of servitude in the servient or in the dominant tenement. Certainly there are cases where it may be said that it is found in both, in the sense that it being established in one of the tenements, it extends to the other as in the case of a road, a bridge, an aqueduct, etc.; furthermore, materially and properly speaking, it is never *between* the two estates. Section 541 does not use the word *between* in the material sense that some may suppose, and only indicates that there is a sign which reveals the service, the servitude, the tie existing between two estates. It is not that the sign is established between the two estates, but that it apparently shows a servitude between two estates. For that reason the existence of a sign between two estates can not be required as an essential element, but instead the existence of a sign which shows a servitude between two estates.

''But are two estates necessary? The idea of unity of estates is relative. The Code does not, nor should it purport that there should be involved two determined estates so that they may not be considered under any other aspect as one, or be divided into three or more. Precisely in a great number of cases relating to rural

estates, there will be involved adjacent parcels which, if belonging to one owner alone and joined by each other, will constitute one estate alone. But the Code refers to real servitudes, and it has expressly stated in §530 that the servitudes always require two tenements, one which suffers the encumbrance and the other which enjoys the benefit, and the appearance of the servitude should always reveal the same aspect. It is in that sense that two estates are spoken of, because the sign thus reveals a service which is rendered by one party to another, and no matter what the real units of estates existing, they should be considered as two or be classified two by two for the purpose of the servitude.''

See *Enciclopedia Jurídica Española,* volume 28, p. 640 (d); Judgments of the Supreme Court of Spain of September 14, 1867 (16 *Jurisprudencia Civil* 107, 109); of November 7, 1883 (53 *Juris. Civil* 203, 208); and of October 21, 1892 (72 *Juris. Civil* 249, 253); wherein it is held that the section in question is applicable when it deals with one estate alone divided among different persons. The decisions of this court have been to the same effect as those of Spain in *Martínez* v. *American R. R. Co.,* 19 P.R.R. 925; *Portela* v. *Societé Anonyme des Sucreries de Saint Jean,* 29 P.R.R. 864; *Muñoz* v. *Viejo,* 35 P.R.R. 793; *Illanas* v. *González,* 51 P.R.R. 779 and *McCormick* v. *Vallés,* 55 P.R.R. 219.

■ Is the oral evidence offered by the defendant sufficient under the law to support the special defense of the acquisition of the servitude of right of way by use or possession from time immemorial prior to June 31, 1889, on which date the Civil Code became effective in Puerto Rico?

Law 15, title 31 of *Partida* 3 is the applicable law to the facts in this case (*Nido & Co.* v. *Albir Alicea,* 27 P.R.R. 32) since that was the law in force prior to the effective date of the Civil Code. The Supreme Court of Spain in its judgment of November 9, 1865, 12 *Juris. Civil* 285, 286, in construing said law in a case where the facts were practically the same as the ones in the case at bar, held:

"That this possession from time immemorial is not sufficiently justified by witnesses, the oldest one 55 years age, even though they say that they have seen it during the time that they can remember; inasmuch as such testimony does not sufficiently show that the use of said servitude surpasses the memory of the oldest men, and there is no one who has knowledge of its origin, that is, as required by said law, *so long ago that man can not remember when it was used for the first time.*"

The witnesses, Marcelino Cruz Pacheco and Abdón Rodríguez, whom the trial court believed, were both born in Guayanilla and have been residents thereof during all their lives, near the estate of "Santa Elena." The former is an old man, 81 years old, and the latter, 73 years. They both testified that they have seen, ever since they can remember, the road "La Bomba" open and used by the public, without knowing when the road was constructed nor when it was used for the first time by the residents of that ward.

In *Nido & Co.* v. *Albir Alicea, supra,* the witnesses called to show the use from time immemorial were two old men, one 65 years of age and the other 76, who testified that they knew and had used the road since they were small and that they had always seen that road in that place. This court in examining the judgment wherein the existence of a servitude of right of way was recognized, speaking through Mr. Justice del Toro, stated the following:

"It is true that better evidence might have been introduced in this case to show use from time immemorial. Old land-marks, maps, books, recitals of occurrences which took place on the said road or in relation to it, etc., would have furnished proof antedating the memory of the oldest inhabitant of the place; but if oral evidence of itself is sufficient, then the testimony of two witnesses of the ages stated, given in the manner indicated, is all that can be required." (P. 37.)

We must agree in that if men of such advanced age as the two witnesses mentioned do not know when the road began to be used but remember having seen it open to the

public during all their lives, the requirement of the law has been fulfilled and the use from time immemorial is sufficiently established. In fact, it may be said that the testimony offered in the present case has sufficiently "shown that the use of said servitude surpasses the memory of the oldest men."

Discontinuous servitudes, whether apparent or not, can be acquired only by virtue of a title. Sec. 475, Civil Code, (1930 ed.) This kind of servitude may be acquired only by prescription, by use from time immemorial, so long as the same has begun and continued prior to the promulgation in this Island of the Civil Code and for such a length of time that the oldest men in the place can not remember when the road was first used. Said Law 15, tit. 31 of *Partida* 3, does not fix the period for the acquisition of a discontinuous servitude by prescription; it only requires that the use be from time immemorial.

The decisions of this court in *Cividanes* v. *Amorós Hermanos,* 8 P.R.R. 558, and in *Nido & Co.* v. *Albir Alicea, supra,* in so far as they imply that a discontinuous servitude of right of way may be acquired by the use of the road for a period greater than forty years, should not prevail and as to this particular, the same are hereby overruled. It is not sufficient to prove that the road has been used for more than forty years. In the case of *Nido & Co.* what was held in fact was that the evidence of two witnesses, one of 67 and another of 77 years of age, whose "evidence clearly covers a period of more than 40 years," was sufficient to show the use from time immemorial.

The judgment appealed from will be affirmed.